The next case is number 2012-1370, La Crosse Technology v. United States. Mr. Rucker. Good morning, Your Honor. I'm Andrew Rucker on behalf of La Crosse Technology. May it please the Court. This case is concerning the proper tariff classification of certain personal consumer electronic devices known as, or commercially known as, leather shoes. In the lower court proceeding at 43 miles at issue, lower court classified these items in three tariff divisions, heading 9015, heading 9025, and heading 9105. We have appealed only 27 of the 43 models at issue in the lower court case, asserting that they were improperly classified in the lower court's analysis. And those have been characterized in our briefs as forecasting weather stations. And they're distinguishable from some of the other weather stations that were at issue in that they perform an analysis of atmospheric conditions to actually provide the user, the consumer, with a weather forecast that they would then use to plan for their outdoor activities. Can I ask you a question about the technology here? And I don't know the extent to which this was part of the record and below, but the forecasting in the weather stations, is that based on anything other than measurements of barometric pressure over time? That is to say, is there in the algorithm that determines the forecast, any input from any of the other instruments that are associated with the devices? And if so, which? In some of the models there would be. For example, what would be the input in addition to barometric pressure over time? So for example, your honor, in an item that has what our client, what La Crosse Technology has identified as an Oscar Outlook, it would also incorporate... What is an Oscar Outlook? An Oscar Outlook is different than the standard forecast of a cloud or a sunshine. All right, but what does that have in it other than a barometer? That would have... Doing the forecast. Sure. That would have also a temperature consideration, because it also shows you a physical depiction of a person, a state of dress. Well, but that doesn't... Temperature is just measuring what the temperature is right now. It's not telling you what it's going to be in five hours, right? Correct. I suppose if it's 30 below right now, it's probably not going to be 106 in five hours, but what I'm really trying to get at is you're talking about forecasting here, and what I'm trying to see is if we're really just saying this is a barometer, albeit a barometer with digital features that allow you to track the barometric pressure over time, or if there's a more complex forecasting algorithm that goes beyond barometric pressure, and let's set the temperature aside. Is there anything else? No, Your Honor. It's based upon, and that's established in the record. We're pretty clear on that, but to say that it's a barometer is really an oversimplification of the product. A barometer is an instrument that would measure and perhaps record the air pressure. Now, that type of an item, that type of instrument, and just to take a step back, one of the critical issues here, and this is one of the issues that we take with the lower court's opinion, is that they fail to define key terms in accordance with GRI 1. They step right into GRI 3 without taking the appropriate steps in GRI 1 to define key terms in the heading set issue. They utilize 9015, 9025, and 9105, fail to define any of those terms. A critical misstep. Next, the relative section and chapter notes also provide guidance in this case. So we have a forecast that's based upon a barometric reading, but beyond that, these weather stations are doing much more than simply recording and measuring the atmospheric pressure. What they're actually doing is taking that information over time, and as Your Honor identified, actually applying that through an algorithm in a microprocessor and developing a unique output, something new, new and useful information that projects future weather conditions. This is what the consumer is buying this device for. This is what makes these devices unique. Different than, let's say, a barometer that we might have on attached to the front of Your Honor's bench that we could look at and say, well, the air pressure right now is S, and that would be correct. Right. Those conventional analog barometers typically also had a little hand that I'm sure you're familiar with that would allow you to move the hand to where the barometer is at the moment, and then if you come back in an hour, you look and the barometric pressure has gone up, and so you can tell that it has gone up, and by how much. What you've got does that automatically, but is it really a different phenomenon? Absolutely, Your Honor, and that's an excellent point, because this is something that the lower core brought up in that very example. Right. That doesn't exist anywhere in the record, but what the lower core did with that example, which I think is relatively obvious, we can identify in our own understanding what an analog instrument does, a thermometer or a barometer. We've seen them around. Well, these devices, first of all, look nothing like that, but that's not what turns this case. What turns this case is the functionality. This is not simply a barometer where you would, as an individual, move the hand from one reading to another, and then in order to make a forecast, you would need to record and then analyze that information. This product, the weather forecast and weather stations, they do that automatically, as you've identified. This is what these appliances do. We're identifying these items specifically as weather appliances. Weather does not occur anywhere in the tariff, but the term meteorological does. That occurs in 1915. What does meteorological mean? Well, that's part of the analysis that was skipped in the lower court's review. Without understanding what meteorological means, it becomes almost impossible to properly identify the appropriate classification for these particular items. Now, looking at the parties briefs, looking at the information submitted in the case below, it doesn't appear that we're too far off on the fact that meteorological, as its common definition is understood, because it's not defined in the tariff, deals with weather. It deals with atmospheric conditions. It deals with weather, also weather forecasting. Here we have a product that performs a function. Whether it's simple or complex doesn't make any impact with respect to the classification because those requirements don't appear in the tariff. We're talking about a heading, heading 1915, that covers meteorological instruments and appliances. If our product falls within that definition under GRI 1, that is where these products should be classified. This analysis was not conducted by the lower court. So you're saying that the distinction is that there is a forecasting feature rather than just a feature reading the current circumstance. That's correct, Your Honor. If you look at the universe of meteorological goods, whether it be an individual thermometer, an individual barometer, or perhaps even a combination of those articles, where they might be on a decorative board and you might have a thermometer, a barometer, a hydrometer, maybe even a clock, all on one combination, those items can be classified within two tariff categories. Ninety-fifteen, which covers all meteorological instruments and appliances. That would apply puna facie to a thermometer or a barometer on its own. But we also have 1925, which covers barometers, thermometers, and other named instruments specifically. So we must read those two statutes, provisions of the statute, in concert. Well, if we look at that, we can say the universe of meteorological instruments and appliances fall in 1915, but for a certain limited exclusion. Those specifically named instruments in 1925 and combinations of those instruments. What's interesting to note in the difference between the two provisions is that only one of them covers meteorological appliances, and that's 1915. So it's also critical that we understand the definition of both the term instrument and the term appliance. The term instrument focuses primarily on a device that will record and or measure a specific quantity under observation. When we're talking about appliance, it can be a device that performs a simple task or function, a work-saving function. As Your Honor had identified, to try and get the forecast from an analog barometer, we're doing some kind of work. We're moving the manual hand on that analog barometer. We're writing down the atmospheric pressure readings over time. The forecasting weather stations do that within the devices themselves. An output is presented. That work is saved. These items are appliances, and what type of function are they pursuing? They're pursuing weather information, weather forecasting, meteorological appliances. So given that, the definitions in this case do point to the fact that our products fall within that initial category of meteorological appliances, we need to look at, with respect to these particular products, the specific interaction between heading 1915, which La Crosse asserts is the correct classification, and then what the court ultimately decided. Admittedly, when you look at these products, they do have additional functions. They do have a time and perhaps a date function. They do have a static measurement display of temperature or barometric pressure at that particular moment, not necessarily the future forecast. These are all functions that are related to meteorology and weather. Weather simply is the atmospheric conditions at a particular place and a particular time. Adding time, adding temperature output, and barometric pressure immediate output to a device that performs a forecasting function does nothing to change the fact that the device as a whole is meteorological. Well, adding a snooze alarm is not really weather related, right? Well, again... I mean, you've got, to be fair here, you have to concede that these things are not devoted entirely to weather forecasting. They are, in part, designed as alarm clocks. In certain cases. Most of them, actually, I think. Well, I think we disagree with that. In some cases, they do have alarms that are related to weather. There are some that are more focused towards a clock function for marketability, right? We're looking at 27 models of products that all essentially perform the same meteorological function but are sold at different price points. To attract the consumers, they have variations in look, in size of the display, in the features of the display. This is all for marketability. If you look at a microwave oven as an example, if we put a clock on that, even though it only needs a timer, does that make it a clock? Or do we have to consider the clock provision? A coffee maker with a clock? It's easy when a device inherently has a timing function to make a clock display appear on that as well. It costs very little to include that when you have a device with a large LCD display, but it provides an inherent value, perhaps, to a particular customer and helps them sell. Smooth alarm, same type of deal. Projection of the information rather than just the display. Again, it's all about marketability. It doesn't change the fact that these are marketed and produced as weather items. Are you disagreeing with the sort of lump characterizations that the lower court used? In other words, to put some products in one category, some products in a second, and some products in a third, and then assess them? Or do you think that there's more of a continuum? No, we would agree with that, and we've accepted the fact that these products fall in various categories based upon the various settings that are issued. This was addressed throughout the proceedings. When we looked at some of the items, we decided, okay, well, these are primarily devoted to telling the time. We withdrew those. On the other side, the government, who had initially classified all these items as clocks, said, well, a lot of these really are meteorological. They gave up on those. Well, in the middle is this separate group, okay? And when looking at these various care provisions, we were guided by, number one, the statute. So we've got July 1. We've got Chapter 90, Note 3, and Section 16, Note 4, that tell us as a whole we can classify these things as meteorological appliances if the rules are met. So you're saying that it's not even fair to say that they could conceivably be classified under two different categories? Not this group, no. No, that's our position, is that the forecasting function is a meteorological appliance. With respect to the rest of the features and functions of these articles, they simply add to that underlying meteorological appliance functionality. When there's one provision that covers these items, they're a functional unit functioning as meteorological appliances with additional meteorological information such as static measurements or perhaps time, they're still classified as meteorological appliances. Go ahead, I'm sorry. Any more questions, Valerie, or I'd like to hear from the government. We'll take a rebuttal time. That's the record. Good morning. Ms. Rubin. Good morning. May it please the Court. As you can see from nearly 300 pages in the joint appendix, this actually involves dozens of different product models and instruments. They are instruments, we're not. Right, but you say not meteorological instruments. They do have meteorological functions, we're not disputing that. But each model has its own array of components, features, and functions. The parties conducted extensive discovery here, and every bit of information that we have about these products came directly from La Crosse. The issue here is not, frankly, the ultimate classification of these products, it's how to get there. And interestingly, I didn't hear Mr. Rucker talk about the general rules of interpretation all that much. He concedes that his whole position relies on the forecasting feature, which, as Judge Bryson elicited, depends only upon the barometric readings. In fact, it wasn't even until the end of his argument that Mr. Rucker even acknowledged that there were other components and functions of these products beyond the forecasting ability. Well, I think in our exchange, he and I agreed that the clocks and the snooze alarms and the regular alarms do have other non-weather related functions, but he said those were quite subsidiary. And if that's the case, that may be the case, that's exactly why you have to... He said that throws it into 3D. Absolutely throws it into 3D. The fact that there is no provision that wholly encompasses every component and every feature of these products necessarily throws this analysis into GRI 3D. And in fact, the palette relies heavily on explanatory notes heading 9025. It says when a combination of the goods that are expressly named in that provision are imported together, then that's still classified on 9025. However, if it takes on the character of another product, then you have to throw it into another classification. And in their brief, they argue that 9015 is that other classification. However, there's a part of the explanatory note that was never discussed, but it is in a joint appendix. It's actually on the next page, which is probably why it will focus on 349 of the appendix. And it says combinations of instruments of this heading with those of another heading are classified in accordance with the rules of interpretation for the nomenclature. That means if you incorporate goods expressly named in heading 9025 with components or features that are expressly described by another provision, you go to the general rules of interpretation. So here, we know absolutely that this product contains at a minimum a cloth component, a barometer, in some cases a hygrometer, and thermometers, and other products and other components that are named in 9025. Okay, so suppose that does take us to 3D, and then we looked at the essential character of the product, right? Which is exactly what Judge Musgrave did. Right, so far, so good. But why is it true that the essential character of these products is the enormity, barometer, et cetera, versus the meteorological instrument provision? Well, as Judge Musgrave's analysis indicated, in this case, these particular products that he described as weather stations, the only additional components beyond the barometer, hygrometer, thermometer, that these particular ones have are cloth components. And he determined that the weather features, the meteorological features that are expressly identified in 9025 outweigh those of the cloth components. And that there are no features whatsoever, no components. Well, I understand why it doesn't go into the cloth category, but what I'm trying to see is why it doesn't go into 9015. Because there's no component of this product that would be identified in 9015 or described. Meteorological instruments go in both 9015 and 9025, 9025 being an anomaly provision for specific instruments and combinations of those instruments and combinations of those instruments with other devices or other items. What I'm having trouble with, and I had the same trouble with your brief, is trying to identify exactly how you would distinguish between a meteorological instrument and a combination of the kinds of devices in 9025 that have as their ultimate purpose in life to forecast the weather. Well, that's either describe or forecast the weather, but certainly in some cases forecast the weather. What is the difference? OK, well, let's get this. The forecasting feature is the only feature that that appellant argues pushes this into 9015. OK, all right. While still acknowledging that there are lots of other features. OK, but what's the difference in your mind between something that's a meteorological instrument and something that's a barometer, thermometer, that, that, that? Well, those are meteorological instruments. Well, I understand, but I'm using the term meteorological instrument as it's used in 9015. In 9015, what is the difference between a 9015 meteorological instrument and those other meteorological instruments or combinations thereof? What is it? Other than the fact that you've put some of these professional weather stations into, you've agreed that they fit within 9015. Right, you're asking where the line is drawn. Where is the line? Yes. OK, a couple of things. 9015 identifies certain meteorological instruments as an anomaly. There's, I'm going to have trouble pronouncing this, anemometers, wind speed, that, that, that. There's wind direction. This is rain gauges. There's certain specific atmospheric phenomenon that are measured by certain components that we know fall within 9015. So if the product is wholly that type of product, 9015. If it's wholly, if every product is named in 9025, those meteorological instruments go in 9025. The explanatory note that I just read to you provides the line. And the line is, you have to do an analysis under 3D. You have to look to see what the whole product is. You have to look at all the components and all the features. And then you have to determine which components and features provide the essential character. Yeah, you said you have to make a determination of what the product is. That's the question. Now, what's the answer? What is it that you look for to determine what the product is? I'm lost on that from the question to the answer. OK, here the product is a product that measures indoor and outdoor temperature. In some cases, measures indoor and outdoor humidity. Always measures indoor air pressure. And always has a clock function. Always has an alarm function. So you have to, there is no single function for this product. So what it is, is a combination of all of those features and functions. Appellant is asking you to focus only on the fact that it records barometric pressure. And by the way, recording barometers are expressly covered by heading 9025. Because it specifically says barometers, barometers, barometers, recording or not. So the fact that these products record a couple of, four barometric readings, and then predict whether the, whether it's going to likely get better or worse without forecasting temperature, or whether it's going to rain, or whether it's going to snow, or whether it's going to be rainy. Well, is there a distinction between recording past history and then having a component that takes that past history and creates a forecast from it? Well, what they're calling a forecast is not the kind of forecast that you think of when you watch NBC News. What they're, as indicated in our reads, all the same forecasts is whether the outdoor weather is likely to get better or likely to get worse. Plaintiff's president, when he testified, indicated specifically that there is no specific atmospheric condition that this product forecasts. You look at the local news and they'll tell you if the temperatures are going to be X, it's going to rain, it's going to be windy, you know, the barometric pressure is going up and down. This doesn't do any of that. This simply tells you whether eight hours from when you're looking at the product, it might be nicer, not even nice, but nicer than it is right now. They're telling us because the forecast is imprecise, it's therefore not a meteorological instrument. Not at all. No, no. What I'm saying is the other, the function, that's one function that this tells you whether the weather might get better. I'm not saying that it's because it's imprecise. We don't know that it's imprecise. It's not imprecise? What I'm saying is this product performs a lot of different functions. And the appellant here wants you to focus only on one, and only on a function that is simply a product of one of the components. And say that under general interpretations, one. I see one. He wants us to forecast on what he says is the primary purpose is to give, let's say, a crude forecast based on changes in barometric pressure. That is right. And isn't the rule to look at the total overall view of the device when assessing the duties? Absolutely. And also to see if there's one specific provision that encompasses all of the components and features. And if not, then you have to analyze further. And in this case, there is no one. I don't understand. It has the weather component and it also tells you the time. It has many weather, many atmosphere condition components. And I use that instead of weather. That way is in their favor, is it not? No. And I use the term atmosphere conditions rather than weather because even their own president said weather relates to outdoor atmospheric conditions. This also measures a bunch of indoor conditions. Barometric pressure, indoor humidity. It depends on where you put the device, whether it's indoor or outdoor. No. Well, if you do it according to the manufacturer's recommendations, their base unit will be indoors. And I would venture a guess that if you place the base unit outdoors, it would get ruined in the first rainstorm. Well, the barometric pressure would be the same, I would assume, although the temperature might very well be different. Right. It measures both indoor and outdoor temperature because there's a remote... When it rains, it doesn't rain inside. It rains outside. But the changes in barometric pressure, what used to be the same. That's correct. At best, this automates the traditional method of forecasting whether barometric pressure is going up or going down. Let's assume that we agree with you on 3B, GRI 3B. Let's assume further that we conclude that with respect to at least some of the disputed products, the essential character is directed to, call it weather or atmospheric conditions or whatever, measurements of those factors. Why isn't it reasonable to say that 9025 should be limited to, in the case of barometers, barometers including recording barometers, but not systems in which a recording barometer is used to make a forecast of the weather, even if that's a crude forecast, as a place to draw the line between 9015 and 9025? Well, if this product were simply and solely and on all four corners, just a barometer that had an icon... Right. Let's reduce it to that lowest common denominator. That's still merely a barometer. Why? I mean, it is not merely a recording barometer. It's a recording barometer with an algorithm being applied to the barometer to tell you it's getting better. I mean, it may be a really simple algorithm, but maybe not. Well, Your Honor, I don't know the answer to that. That product, the far line, does not exist. There are a lot of products in this group that look pretty much like that, and I think that's your submission. You're saying that, with respect to the weather aspect of some of these products, they're giving you pictures of a little guy with a raincoat on or a picture of a little guy with a smile on, and that is a kind of crude but algorithm-driven forecast based on barometric pressure changes, correct? That is, yes. Okay, well, that's all I'm saying. Once you put the little guy on there with a smile or a frown, why isn't that enough to convert it into a meteorological instrument and take it out of the category of barometers, including recording barometers? That's the core difficulty I'm having with this case, and I need an answer to that question. Well, the answer is... You're not going to like this answer. I don't know, because that product doesn't exist, and that product is not in this case. Suppose I think that I'm looking at one of these products which has a very basic forecasting function, and let's assume that I make the essential character determination under 3D and say that the clock is really not that important to this device. So let's just assume that's the device I'm concerned with. I want to know which category that goes into and why. Your Honor, if that product was before you, first off, it would have been before customs, and we would have made a decision on that. But you're ignoring the thermometers, the hygrometers, and the clock function. And there is one misstatement that Mr. Rucker made. He said people buy this so they can plan their outdoor activities and they're only interested in the forecast function. I know that's a paraphrase. The president of lacrosse, when he testified, stated most people buy this to know what the temperature is. They don't care about the forecast function. They want to know what the indoor temperature is and what the outdoor temperature is. And it may help them plan their outdoor activities, but thermometers are expressly provided for in 9025. So the answer to your question is I don't know if you added the functionality to a recording barometer, and that was the whole product, where that would be classified. At that point, that would be a combination of a microprocessor and a recording barometer, and that would be the whole product. I don't know. Well, here's something that I'm sure you do know, which is what was it about the professional stations? What is the sine qua non of the professional weather stations that put them into 9015? They had additional components that were identified in 9015.  Rain gauges. What does that do? And they also – well, it was more towards – I think it was from Weather Geek. They could also download a lot of data, historic data, from these products and analyze it later on and, you know, see, you know, what historically – it was just – there was more to it. And so it was more along the lines of what 9025 does. It's combinations of instruments plus products or instruments from – that belong in another category. Then you look at the general rules of interpretation. We actually didn't completely agree with Judge Musgrave's decision on all of the products that he put into 9015, but we're okay with that now. With respect to some of them, I think, correct? We absolutely were. Like five of them, I think you agree. The question here – the appellant's argument here is that these products are all classifiable under GRI 1. He's not saying that if they're classifiable under GRI 3, the court got it wrong. He's saying every one of these products is completely engulfed by heading 9015. No question. What he hasn't done is establish that 9015 – is such that it encompasses every last feature and component of these products. So what we're asking you to do is simply affirm Judge Musgrave's decision that these products need to be classified in accordance with GRI 3 and not GRI 1. And with some of the products, 9015 will end up being the correct decision. In some cases, 90105 is the correct decision, but what you have to do is apply the general rules of interpretation appropriately, and that's what Judge Musgrave did. And I see I'm way over my time. Thank you. Any more questions? Thank you so much. And that's your record. Thank you, Your Honors. So I think one of the initial takeaways we have is obviously there's a lot of information here that needs to be digested. There is a lot of information in the joint appendix. Clearly, these items have a lot of different features. But let me just pick up on one of the last things that opposing counsel said. She had stated that we haven't established that 9015 covers each and every function of these items. Well, in looking at these items, as I stated in my earlier portion of my statement, these are meteorological devices. The government's continuing to ignore the distinction between appliances and instruments is part of the problem. As Your Honor identified, trying to get to the answer in the proper classification of an item in this type of case is critical. We propose that there is a clear delineation between items that would fall in, and meteorological items that would fall in 9015 and that would fall in 9025. And we've established that and how that would be applied based upon the legal rules in the statute itself. If your distinction is a predictive function, Let me point you to the explanatory notes for 9025. Aren't the fancy hygroscopes that they talk about, the figurines coming in and out according to whether it's likely to be good or bad, doesn't that have a predictive function? Your Honor, we have no idea. I don't think there's been any evidence that has been presented on what exactly is a fancy hygroscope. One thing that we need to understand is that the ENs are difficult to apply to these products because they mainly deal with analog type of instruments. And that's not to say that they don't have a bearing in this case because they clearly do. When you look at the ENs, they talk about combination particles, combinations of instruments. When they include a device that gives the product the character of an article of another heading, and they specifically identify heading 9015, the product is to be classified in heading 9015. This does not require a GRI 3D analysis. What's your response, though, to the comments that the government made with respect to the last sentence of that explanatory note that then would seem to push you into GRI 3? Well, our response would be that that's a legally correct statement. Any classification analysis is conducted in accordance with the general rules of interpretation. There's nothing legally incorrect about that portion of the explanatory note. The extent that it disagrees or contradicts, if you could even get that far, the previous specific provision that talks about combination of instruments with other devices. These weather stations contain a microprocessor that is specifically intended to analyze the recorded information from these instruments and then produce a different type of information. It's not spitting out the actual parametric pressure. In fact, most of the forecasting weather stations include a graphical icon. They do not include a display of the actual parametric pressure at that time. They are recording parametric pressure, but the recordation of that information is for a specific functionality. It's for a specific task, and these appliances conduct that task with the information essentially behind the scenes, within the machine itself, and then provide the output. And your argument, I take it, is that anything that provides the output, other than simply the record of the actual measurement of parametric pressure, would throw it into 9015 if all it showed you was a recording of the parametric pressure itself, and that barometer would be a 9025. Is that your argument? The argument isn't that simple, Your Honor. The argument is that these particular products... Somehow suspected. Their appliances... Going back to what I said earlier, we have to look at the larger universe of meteorological instruments and appliances to even get to the distinction between what's a 9015 item, what's a 9025 item. So first, at a higher level, thermometers, barometers, hygrometers, recording or not, they're going to fall in the plain description of 9015 because they are measuring a meteorological phenomenon. They're measuring atmospheric pressure. Except that they're AONL and E9025. Correct. So if it's just a barometer that is either recording or measuring, then 9025 trumps it. So if you're looking at the pie and you have a small sliver that's 9025, everything else that's a meteorological good goes in 9015. And we're not ignoring the fact that these pies have other meteorological functions that could individually be classified in 9025. Well, individually or in combination. I believe 9025 is the combination. Well, exclusively 9025. So a combination hygrometer, barometer, thermometer is 9025. When you add another device, such as a microprocessor, an LCD screen that analyzes and displays a forecaster, that same combination now becomes 9015. And the ENs correct that. The legal requirements provide that as well. GRI 1 says look at the definitions of the headings. Well, suppose, let me ask you this question about Ms. Rubin's argument. If I understood you correctly, she's saying you have put your eggs in the GRI 1 basket. You have not argued that if we reject that argument, the GRI 3B analysis, you can win under that. Do you agree with that, first of all? Yes, I agree that that is our legal argument. I disagree with the fact that we would not prevail under GRI 3B if that's the legal analysis applied. We would still prevail because you have a determination of character in either case. The ENs for 9025 are directing a character analysis. It's not a central character. The government is getting confused, as the lower court has. In reading 9025 ENs, it says items that are combinations of 9025 instruments in combination with other devices that have the character of other headings go there. That's not a GRI 3B analysis. That's under GRI 1. So we've conducted the character analysis throughout our argument. So if the court were to decide, well, GRI 1 doesn't apply, which our position is that it does, inherent in our analysis is a character analysis. What is the character of these products? The character of these products is that they are meteorological appliances. Once you get to that determination, whether it's GRI 1, which we believe is the applicable and legal, I'm sorry, which is the legal direction for this particular product, you would get to 9015. If you take that same character determination and then apply it under GRI 3B, the result is the same. And that's the point at which you do the essential character analysis, correct? Yes. Well, character as it's described in 9025, they don't call it essential character analysis. It's not GRI 3B. But 3B does. Right. So it would be... Is the legal test different under 1 versus 3? Not in this case, because here the EN is directing us to review the character of these goods, because they do have combinations of the named instruments. No one has denied that. But what they do have are additional devices, which put them into the clear scope of 9015. If you're saying that under GRI 1 you go to the explanatory notes, those explanatory notes essentially tell you to do a character analysis and you would win under that. But if not, the character analysis done there is no different than the character analysis under 3B? Correct. That's absolutely correct, Your Honor. And, you know, we don't believe you get that far because of the... When you properly interpret these character terms, when you look at Chapter 19-03 and the functional unit analysis that you conduct under Section 16-04, once we determine that the function of these items is meteorological, whether it be meteorological forecasting, meteorological monitoring, recording of the 9025 instruments, it's all meteorological. It all falls in that broad definition that is in 9015. No matter how narrow the government tries to make 9015, they cannot deny, and in fact they admitted it in their argument, that these are meteorological devices. These have meteorological function. They are covered by 9015, so the question then becomes, how do you get it out of 9015 to 9025? And the simple answer here is you don't. But we have to understand the legal analysis that gets us to that point. That was where the court got it wrong, and we're asking that you apply the proper legal analysis in this case, and that is to work through GRI 1, define the relevant terms as found in 9015 and 9025, apply the relative chapter and section notes, and ultimately conclude that these items are classified under HETI 9015 as meteorological items. Just one more question, if I could. Sounds like Columbo. But for people who are my age... No, I don't think so. There's a difference between me and Columbo. So, to make sure I understand exactly what you're saying about what the scope of 9025 is, you're saying, well, combinations of these instruments, that's fine, but it's restricted. Any combination is restricted to those instruments and only those instruments, so that if something has those instruments and one additional instrument, it falls right out of 9025. Is that your position? And let's assume, for the purpose of this question, that I've already gotten to 3B. So this is under a 3B analysis, and I'm looking at 9025 under the 3B rubric. Are you with me? Yes. So, in order to come to 3B, you've already conducted the character analysis. Well, what I've done is I've decided that these things all have clocks on them, and that they have, I'll say, a predominant weather-related instrumentation. All right, so now I'm looking, well, given this predominant weather-related instrumentation, is it 9025 or is it 9015? I know it's not 9105. I've dismissed that. Given my question, does the instrument I just described fall outside of 9025 and therefore in 9015? In that case, the review is the same as we have seen described in the, when you're reviewing the character. You're reviewing the character. So, do you or I agree that you're reviewing the essential character? Well, wait a minute, wait a minute. I'm looking for a yes or no answer. I gave you an example of an instrument that has a combination of a couple of these devices and it has one more device. Let's say it, I don't know, it measures, it has a rain gauge, whatever. Does that make it fall out of 9025 or not? Well, we have to look at the character. If you were talking about just including, you're initially going, well, you're talking about a thermometer, a barometer, and a clock. That does not have the character of a 9015 meteorological device because it just has a combination of a thermometer and a barometer. Again, we're looking at character. When we're looking at the ENs, it provides specific guidance on how we deal with those types of combinations. We look at the character of the article. If the added device, so if the added clock gives it the character of another heading, that's where it goes. This is still GRI1. I'm not saying that we don't get to GRI3b sometimes, but the explanatory note identifies that the general rules of interpretation apply if we can't utilize that initial interpretive direction. But here, if we have, in the case of a 9015 instrument, along with the other instruments, we have to look at the character. Does it have the character of meteorological appliances or instruments in 9015, or does it have the character of meteorological instruments in 9025? In your case, without having more facts, it's hard to determine, but I would suggest this. We would look at standard character type analysis, quantitative or qualitative review. Is the rain gauge the primary function of that particular article? It goes in 9015. Is the thermometer and the barometer the primary of that article? Then it's 9025. Either way, we conducted the character analysis pursuant to the guidelines of the explanatory notes, and we're still under an essential character review, whether it's GRI-1 or GRI-3B in that case. We have to review the character of that article on a case-by-case basis. Okay. Thank you, Your Honor. Any questions? Okay. Thank you, Mr. Rucker and Ms. Rubin. The case is taken under submission. All rise.